FICKER, *Respondent,*
*v.*
DIEFENBACH, *Appellant.*
(No. 167-559, CA 8956)
578 P2d 467

Beverly Stein, Legal Aid Service, Portland, argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Schwab, Chief Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Defendant appeals from a judgment for plaintiff entered in a Forcible Entry and Detainer (FED) proceeding.[1] Plaintiff has not appeared in this court.

Commencing in October, 1971, defendant rented, on a month-to-month basis, a house owned by plaintiff. The chimney on the house had a crack in it as a result of the Columbus Day storm in 1962. Starting October 1, 1972, and on each October 1 through October 1, 1976, defendant sent a letter to plaintiff complaining of the cracked chimney, stating that it constituted a fire danger. The assessed value of the property for tax purposes was increased to $16,000 for the tax year 1976-77; for the tax year 1975-76 the assessed value was $11,750, and for the preceding year it was $10,790. Plaintiff decided to sell the property and on November 3, 1976, notified defendant of that fact. Defendant would not permit plaintiff in the house in order to show it to prospective purchasers, but made two offers to purchase the property for $10,500—the first on contract with $500 down, and the second for cash. Neither offer was accepted.

The house was not sold by the end of December, and plaintiff notified defendant on December 29, 1976, that the rent would increase as of February 1, 1977, to $165 per month because of the increase in assessed value; it had formerly been $110 per month.

On January 26, 1977, the chimney showed evidence of further deterioration and defendant notified the local fire inspector. On February 5, 1977, defendant enclosed a check in the amount of $117.50 as rental for February with a letter stating that the amount of the check "represents the legal one percent (1%) of the assessed valuation of this property for the tax year 1975-6." The letter went on to state that the assessed valuation of $16,000 for 1976-77 "is illegal and contrary to law," because there had been no "proof of

---

[1] ORS 105.105, et seq.

actual and substantial improvements." It is clear from that letter that defendant understood the basis for the rent increase and accepted as a formula for determining rental an amount equal to 1% of assessed value.[2] The letter further reminded plaintiff of the condition of the chimney and advised him of an inspection by the fire marshal.

Plaintiff returned the check immediately and demanded the full rental amount of $165. No mention was made of the chimney. On February 11, 1977, defendant had the chimney repaired at her own expense.[3] On February 14, 1977, defendant filed a complaint with the Bureau of Labor alleging that plaintiff had discriminated against her with respect to housing on account of her sex. On February 22, 1977, no rental payment having been received by plaintiff, a 30-day notice to vacate the premises was served on defendant, and on February 28, 1977, defendant complained to the Bureau of Buildings, Electrical Division, which sent plaintiff a "Notice of Violation of City Ordinance."[4]

On March 28, 1977, this FED proceeding was commenced. Defendant's answer alleged eight "affirmative defenses and counterclaims" under the Oregon Residential Landlord and Tenant Act. ORS

---

[2]The rent before the increase was $110 per month, apparently based on an assessed value of $10,790. Defendant's tender of $117.50 was based on an assessed value of $11,750.

[3]The costs of the repair are not at issue in this appeal, having been settled between the parties in a small claims action by defendant.

[4]The notice itemized the violations:

"Kitchen area: Remove all cords and install outlets where needed and a range outlet.

"Back Porch: Remove extension cords and install proper amount of convenience outlets.

"Install washer and dryer outlets properly with proper breaker protection and wiring.

"Remove cords from lights and install outlets through house, remove outlets from floor (by fireplace).

"Remove all loose or broken switches and install boxes and switches properly."

91.700-91.895 (ORLTA). In each of five counterclaims, defendant claimed damages for "mental distress" in varying amounts. Plaintiff's demurrer to those counterclaims was sustained on the ground that such damages were not allowable under ORLTA. That ruling is the basis for defendant's first assignment of error.

Defendant does not refer us to any language in ORLTA which specifically authorizes damages for mental distress, and we have found none. She relies heavily on ORS 91.725(1), which provides:

> "The remedies provided by ORS 91.700 to 91.895 shall be so administered that an aggrieved party may recover appropriate damages. The aggrieved party has a duty to mitigate damages."

A reading of ORLTA as a whole indicates that in most, if not all, instances the damages for which provision is made are expressed in terms which may be readily computed to liquidated amounts. Examples are: ORS 91.745(2), "actual damages" plus "an amount up to three months' periodic rent"; 91.760(8), "an amount equal to twice the amount wrongfully withheld"; 91.815, "an amount not more than two months' periodic rent or twice the actual damages sustained by him, whichever is greater."[5]

In any dispute where one or both parties claim the other violated a legal duty, whether contractual or statutory, there is very likely to be emotional disturbance or mental distress suffered by each of the parties. This would be even more likely with respect to the residential landlord and tenant relationship. If damages for mental distress were intended to be recoverable, they would be most appropriate where the wrong

---

[5]Two of defendant's counterclaims for mental distress are based on retaliatory conduct under ORS 91.865, subsection (2) of which entitled tenant "to the remedies provided in ORS 91.815 * * *." That section, as indicated, specifies the damages allowable, but does not include those for mental distress.

Where the Act provides for "actual damages" (as in ORS 91.745 and 91.815), we construe the phrase to mean pecuniary loss incurred as a proximate result of the breach for which such damages are provided.

is deliberate, grossly negligent or malicious.[6] Yet the two sections which deal specifically with such conduct do not authorize such damages. ORS 91.840(4) provides that "[i]n the event of deliberate and malicious violation the landlord shall be liable for twice the actual damages sustained by the tenant." ORS 91.805(1) and (2)[7] carefully circumscribe damages recoverable for the landlord's deliberate refusal or grossly negligent failure to supply any "essential service."[8]

■ Defendant would have us ignore the foregoing specific provisions for damages in given situations,

---

[6] In *Williams v. Joyce,* 4 Or App 482, 504, 479 P2d 513, *rev den* (1971), we held that damages for "humiliation" may be awarded under ORS ch 659 as a result of unlawful racial discrimination. The statute, however, contained no specific damage provisions. This court held: "The award of damages to compensate for a victim's humiliation is an act reasonably calculated to eliminate the effects of the discrimination."

*See* 5 Corbin, Contracts 429, § 1076 (1964), for discussion of allowing damages for mental suffering caused by wanton or reckless breach of a contract to render a performance of such a character that the promisor had reason to know when the contract was made that a breach would cause such suffering.

[7] ORS 91.805(1) and (2) provide:

"(1) If contrary to the rental agreement or ORS 91.770 the landlord deliberately refuses or is grossly negligent in failing to supply any essential service, the tenant may give written notice to the landlord specifying the breach and may:

"(a) Procure reasonable amounts of the essential service during the period of the landlord's noncompliance and deduct their actual and reasonable cost from the rent;

"(b) Recover damages based upon the diminution in the fair rental value of the dwelling unit; or

"(c) Procure reasonable substitute housing during the period of the landlord's noncompliance, in which case the tenant is excused from paying rent for the period of the landlord's noncompliance.

"(2) In addition to the remedy provided in paragraph (c) of subsection (1) of this section the tenant may recover the actual and reasonable cost or fair and reasonable value of the substitute housing not in excess of an amount equal to the periodic rent."

[8] It is not clear under what sections defendant's first two counterclaims for mental distress damages are asserted. Basically, each claims a failure to maintain the premises in a habitable condition, giving different reasons, which would violate ORS 91.770, which does not provide a remedy. Tenants' remedies for violation of ORS 91.770 or the rental agreement are provided in ORS 91.800 and 91.805, neither of which provides for mental distress damages.

and hold that in any case where the landlord violates ORS 91.770 (requiring a landlord to maintain premises in habitable condition) the tenant may recover "damages" under ORS 91.800(2), which provides:

> "Except as provided in ORS 91.700 to 91.895, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or ORS 91.770."

We have held that ORS 91.800(2) is not authority for damages independent of the remainder of the Act. *L & M Investment Co. v. Morrison,* 34 Or App 231, 578 P2d 462 (1978). We now amplify that holding by stating that the reference to damages therein is to those damages authorized by other sections of the Act. If that were not the case, there would be no necessity for the other sections providing for certain damages in specific cases involving a violation of ORS 91.770 or the rental agreement.

Furthermore, if defendant's construction of ORS 91.800(2) were correct, it would follow that the landlord would also be entitled to recover mental distress damages under ORS 91.820(4),[9] in any case where the tenant has violated his duties under the Act or the rental agreement. In some, if not most, instances, the result would be a balancing act to determine which of the two became the more distressed as a result of the dispute.

Defendant suggests that a landlord's violation of the Act is more akin to a tort than it is to a breach of contract,[10] and therefore damages applicable to tort

---

[9] ORS 91.820(4) provides:

> "Except as provided in ORS 91.790 to 91.895, the landlord may recover damages and obtain injunctive relief for any noncompliance by the tenant with the rental agreement or ORS 91.775."

[10] The Supreme Court has held that in the absence of anything in the statutory scheme indicating a contrary intention, the violation of a statutory duty may be treated as legal wrong or tort. *Urban Renewal Agency v. Lackey,* 275 Or 35, 549 P2d 657 (1976).

*See* Report of Subcommittee on the Model Landlord-Tenant Act of Committee on Leases, ABA, 8 Real Property 104, 105 (1973), where it is stated:

actions should be recoverable. As we view the Act, however, nothing is accomplished by putting a label on a breach, because the Act specifies what damages may be recovered whether the wrong be *ex delicto* or *ex contractu.*[11]

We hold, therefore, that damages for mental distress are not recoverable under the Act. It follows that the sustaining of plaintiff's demurrer to defendant's counterclaims alleging mental distress was not error.

Defendant's second assignment of error is that the trial court erred in withdrawing defendant's fourth affirmative defense and counterclaim from the jury. The relevant allegation of that counterclaim is:

> "Plaintiff has retaliated against Defendant by raising the monthly rental to $165 on February 1, 1977 after defendant had complained to the Electrical Division of the Bureau of Buildings, City of Portland, and to the Plaintiff."

We construe the allegation to mean that defendant complained to both the Electrical Division and to plaintiff about electrical deficiencies relating to the premises, and that plaintiff retaliated by raising the rent.

Suffice it to say that plaintiff advised defendant of the increase in rental in December, 1976, and defendant did not complain to the Electrical Division until February, 1977. There is no evidence that defendant complained to plaintiff about electrical deficiencies at

---

"Initially, we must emphasize that the proposed Act departs from the traditional view that the landlord-tenant relationship is founded in property law. Instead, the Act makes it plain that the relationship of the landlord and tenant in a residential lease arrangement should be founded in contract law."

[11] In the ordinary breach of contract situation, damages for mental distress are not allowable. 5 Corbin, Contracts 426, § 1076 (1964). And *see* ORS 91.715:

"ORS 91.700 to 91.895 apply to, regulate and determine rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state."

any time. While there is a disputable presumption that any action taken by the landlord against the tenant within six months after such a complaint is made, the presumption does not arise if the tenant made the complaint after notice of a proposed rent increase. ORS 91.865(2). Without the presumption, the only evidence is that the rent was increased because of the increase in the assessed valuation of the property. The trial court did not err in withdrawing the fourth counterclaim from the jury.

Defendant recognized the total lack of proof to support this allegation, and moved during the trial to amend it to conform to the evidence, without specifying what the amended allegation would state.[12] The motion was denied. If there was error in the trial court's denial of that motion, it is not assigned as error on this appeal.

Defendant's final assignment of error relates to the award of attorney fees to plaintiff as the prevailing party. The judgment of the trial court, based on the jury verdict, was that plaintiff was entitled to possession because the rental due exceeded the damages awarded defendant, and that plaintiff was, therefore, the prevailing party under ORS 91.810 and ORS 91.755. The court's award of $800 to plaintiff on account of attorney fees incurred during a three-day trial is supported by the evidence.

Affirmed.

---

[12] It might be inferred from the record that defendant wanted to amend the allegation to claim that rent was increased in retaliation for defendant's complaining to plaintiff about the cracked chimney.